United States District Court
Southern District of Texas
**ENTERED**
May 26, 2016
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| REYNA OSORIO-MARTINEZ, | § | |
| Movant, | § | |
| | § | |
| v. | § | Civil Action No. B-14-089 |
| | § | (Criminal No. B-11-444-1) |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

The Court is in receipt of Reyna Osorio-Martinez's 28 U.S.C. § 2255 Motion (hereinafter, Osorio-Martinez's "Motion" or "§ 2255 Motion"). Dkt. No. 1. It is recommended that the Court dismiss Osorio-Martinez's Motion with prejudice. Additionally, it is recommended that the Court decline to issue a certificate of appealability.

## I. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 2255.

## II. Background and Procedural History

Osorio-Martinez's § 2255 Motion attacks her judgment of conviction and sentence in *United States v. Osorio-Martinez*, 1:11-cr-00444-001, Dkt. No. 1 at 1.[1]

---

[1] Hereinafter, Osorio-Martinez's criminal case docket entries ("CR Dkt. Nos.") will be referred to only by their criminal docket number.

More specifically, she attacks the judgment she received for attempting to bring more than 50 grams of methamphetamine into the United States, from Mexico, in a compartment hidden in a blue Toyota Camry on April 16, 2011.  *See id; see also* CR Dkt. No. 95 at 4, ¶ 9.  When she was apprehended at the United States port of entry, Osorio-Martinez was a passenger in the blue Camry, which was driven by a woman named Maria Ysabel Lopez-Olmedo.  CR Dkt. No. 114-1 at 11-12.

The evidence at Osorio-Martinez's trial revealed that a woman named Nidia Abril Gutierrez had previously owned the blue Camry.  CR Dkt. No. 114-4 at 12.  The evidence also revealed that Gutierrez had driven Osorio-Martinez into the United States before in the blue Camry on three prior occasions.  *Id*. at 18.  Gutierrez testified that Osorio-Martinez would tell her where to drive on these trips, and that Osorio-Martinez's son, Pedro Vasquez, would sometimes take possession of the blue Camry during their stays in the United States.  *Id*. at 18-24.  On one of these trips, when Pedro brought the blue Camry back to Osorio-Martinez and Gutierrez, Gutierrez noticed a black bag in the trunk.  *Id*. at 24.  Gutierrez was told that the bag was filled with money.  *Id*.  Gutierrez testified that, on April 13, 2011, she was arrested and charged with importing methamphetamines into the United States.  She was later convicted and sentenced to serve 60 months imprisonment for that crime.  *Id*. at 8-9.

In reviewing the sufficiency of evidence supporting Osorio-Martinez's conviction, the Fifth Circuit Court of Appeals summarized the underlying facts of Osorio-Martinez's criminal case as follows:

> The record is not devoid of evidence that Osorio Martinez knew that the vehicle she was a passenger in contained a controlled substance.  The recently purchased vehicle contained a high value of narcotics hidden in a

false compartment.  She told agents that the vehicle belonged to her son-in-law, but the vehicle was not registered in her son-in-law's name, and she admitted to the driver of the vehicle that she fabricated that story. She told agents that she had known the driver, through the driver's mother, for several years, but the driver denied that Osorio Martinez had previously known her or her mother.   The driver's testimony was substantiated by Osorio Martinez's inability to identify the driver's mother from a photograph.  Immigration records revealed that Osorio Martinez had entered the United States in the same vehicle three times before.  Osorio Martinez had been driven in this vehicle by a person who was later arrested for bringing methamphetamine into the United States. During the prior trips, Osorio Martinez maintained close contact with the person directing her and the driver's activities, she relinquished possession of the vehicle for extended periods of time, and she did not spend any or much time with her family, the stated purpose of the trips.

CR Dkt. No. 129 at 2-3 (record citations omitted).

As a result of her drug trafficking activities, the Government filed an indictment charging Osorio-Martinez with numerous drug trafficking offenses.   CR Dkt. No. 18.  On September 23, 2011, after a two-day trial, a federal jury found Osorio-Martinez guilty of the following counts of criminal conduct:

Count 1: conspiracy to possess with intent to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(A), and § 846.

Count 2: possession with intent to distribute more than 50 grams, that is, approximately 6.59 kilograms of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(A), and 18 U.S.C. § 2.

Count 3: conspiracy to import more than 50 grams of methamphetamine, in violation of 21 U.S.C. § 952(a), § 960(b)(1), and § 963.

Count 4: importation of more than 50 grams, that is, approximately 6.59 kilograms of methamphetamine, in violation of 21 U.S.C. § 952(a), § 960(b)(1), and 18 U.S.C. § 2.

CR Dkt. No. 84 (Jury Verdict); CR Dkt. No. 104 (Judgment).

On January 23, 2012, United States District Judge Hilda Tagle sentenced Osorio-Martinez, imposing: (1) a 235-month sentence of imprisonment; (2) a five-year term of supervised release, without supervision; and, (3) special assessment fees in the amount of $400.00.  CR Dkt. No. 104 at 3-6.

Osorio-Martinez appealed.  CR Dkt. No. 101.  The Fifth Circuit Court of Appeals affirmed the District Court's judgment.  CR Dkt. No. 129.  The Supreme Court denied Osorio-Martinez's petition for a writ of certiorari on May 28, 2013.  *Osorio-Martinez v. United States*, 133 S.Ct. 2753, 186 L.Ed. 2d 206 (2013).

Through counsel, on May 27, 2014, Osorio-Martinez filed her instant timely § 2255 Motion.  Dkt. No. 1.[2]  Osorio-Martinez's § 2255 Motion alleges that her trial counsel, Oscar de la Fuente, Jr., and her counsel at sentencing, Nathaniel C. Perez, provided her with ineffective assistance of counsel.  *Id.* at 4, 5, 7, 8.  On June 16, 2014, the Government filed a motion seeking a court order directing Osorio-Martinez's former counsel to file affidavits responding to Osorio-Martinez's claims.  Dkt. No. 5. The Court granted this motion, and Perez and De la Fuente filed their Affidavits on June 24, 2014, and July 8, 2014, respectively.  Dkt. Nos. 6, 11, 13.  In their Affidavits, Perez and De la Fuente deny Osorio-Martinez's allegations.

On August 1, 2014, the Government filed a Response and Motion to Dismiss Osorio-Martinez's § 2255 Motion (hereinafter, the "Government's Motion").  Dkt. No.

---

[2]   Osorio-Martinez's § 2255 Motion is timely because it was filed within one year of the Supreme Court's denial of her petition for certiorari.  *See* 28 U.S.C. § 2255(f)(1) (providing a one-year limitations period from the date the conviction becomes final); *United States v. Thomas*, 203 F.3d 350, 355 (5th Cir. 2000) (when a federal defendant files a timely notice of appeal, his conviction becomes final on the day the Supreme Court denies his petition for writ of certiorari).

14.    Osorio-Martinez filed a "Traverse" responding to the Government's Motion (hereinafter, Osorio-Martinez's "Reply") on August 27, 2014.   Dkt. No. 15.   After reviewing all of the relevant records and pleadings, the Court found that an evidentiary hearing was required to determine the veracity and credibility of Osorio-Martinez's claims.   Dkt. No. 16.   An evidentiary hearing was held on November 18, 2015.   *See* Dkt. No. 38 (containing evidentiary hearing transcript).   Perez, De la Fuente and Osorio-Martinez testified at the hearing, along with several members of Osorio-Martinez's family.   *Id*. at 2.

With leave of Court, Osorio-Martinez filed a "Post Evidentiary Hearing Memorandum" on December 11, 2015.   Dkt. No. 40.   Also with leave of Court, the Government filed its "Post-Evidentiary Hearing Memorandum" on January 13, 2016. Dkt. No. 44.

### III.  Osorio-Martinez's Claims

At the evidentiary hearing, Osorio-Martinez withdrew her claim that her sentencing counsel, Nathaniel C. Perez, provided her with ineffective assistance.   Dkt. No. 38 at 5, 164-65.   Osorio-Martinez lists her remaining three grounds for relief as follows:

> **Ground One**:  Trial Counsel did not interview Petitioner's adult children and their families to disprove allegations by witnesses Nidia Abril Gutierrez and Maria Ysabel Lopez-Olmedo.   Specifically, Trial Counsel did not interview Pedro Vasquez, to disprove allegations that he was romantically involved with Nidia Abril Gutierrez, and had picked up a vehicle loaded with drugs from Ms. Gutierrez while she was visiting Texas with Petitioner, or interview Modesto Vasquez or Diana Ferrer to disprove allegations that the Petitioner spent little time with her family when visiting Texas, or that one of the Petitioner's daughters was

planning to pick up a car loaded with drugs from a parking lot in Brownsville on the day of the Petitioner's arrest.  Trial Counsel refused to listen to the Petitioner's version of events, and yelled at her for lying to him whenever her version of events contradicted the Governments. Petitioner repeatedly attempted to get Trial Counsel to interview her children and call them as witnesses, and he refused to do so, claiming any evidence that contradicted the Government's story would make things worse for the Petitioner.

**Ground Two**:  Trial Counsel denied the Petitioner her right to testify at trial.  Petitioner repeatedly stated at trial that she wanted to testify. Trial counsel told her to keep quiet, and refused to call her as a witness.

**Ground Three**:  Trial Counsel informed the Petitioner that a plea agreement existed, which would have capped the Petitioner's sentence at ten (10) years in prison.  Trial counsel then told then the Petitioner that she would get less than ten years if she went to trial. As a result, the Petitioner did not take the plea agreement."

*Id*. at 4, 5, 7 (errors in original, formatting altered).

## IV.  Legal Standards

**A.  28 U.S.C. § 2255**.  Pursuant to 28 U.S.C. § 2255, a defendant may move to vacate, set aside or correct his sentence if: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. 2255(a).  The nature of a § 2255 collateral challenge is extremely limited, being reserved for instances of constitutional or jurisdictional magnitude. *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).  If an error is not of constitutional magnitude, the movant must show that the error could not have been

raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

**B. Ineffective Assistance of Counsel.** The "Sixth Amendment guarantees a[ll] defendant[s] the right to have counsel present at all 'critical' stages of the criminal proceedings" instituted against them. *Missouri v. Frye*, ____ U.S. ____, 132 S.Ct. 1399, 1405 (2012) (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)). Critical stages include not only trial, but also pretrial proceedings — including the plea-bargaining process. *Laffler v. Cooper*, ____ U.S. ____, 132 S.Ct. 1376, 1384 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing is also constitutionally impermissible. *Laffler*, 132 S.Ct. 1376, 1385-1386. The constitutional standard for determining whether a criminal defendant has been denied effective assistance of counsel at any of the critical stages mentioned above was announced by the Supreme Court in *Strickland v. Washington*:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. 668, 687 (1984).

In order to demonstrate that his attorney's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an

objective standard of reasonableness." *See Williams v. Taylor*, 529 U.S. 362, 390-91 (2000); *Darden v. Wainwright*, 477 U.S. 168, 184 (1986); *Strickland v. Washington*, 466 U.S. at 687-88; *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997); *Andrews v. Collins*, 21 F.3d 612, 621 (5th Cir. 1994). A convicted defendant carries the burden of proof and must overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 687-91; *Jones v. Cain*, 227 F.3d 228, 230 (5th Cir. 2000); *Green v. Johnson*, 160 F.3d 1029, 1036 n.1 (5th Cir. 1998); *Burnett v. Collins*, 982 F.2d 922, 928 (5th Cir. 1993).

In reviewing counsel's performance, the Court must be "highly deferential," making every effort "to eliminate the distorting effects of hindsight," and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution. *Id*. In order to establish that he sustained prejudice, the convicted defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Williams v. Taylor*, 529 U.S. 362, 391; *Strickland*, 466 U.S. at 694.

The prejudice prong of *Strickland* focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. "Unreliability or unfairness does not result if the

ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Williams*, 529 U.S. at 393 n. 17; *Strickland*, 466 U.S. at 692.

Because a convicted defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or actual prejudice under that test will ordinarily make it unnecessary to examine the other prong. *See Strickland*, 466 U.S. at 700; *Ransom v. Johnson*, 126 F.3d at 716, 721 (5th Cir. 1997); *United States v. Seyfert*, 67 F.3d 544, 547 (5th Cir. 1995); *Armstead v. Scott*, 37 F.3d 202, at 210 (5th Cir. 1994). Therefore, failure to establish that counsel's alleged performance fell below an objective standard of reasonableness renders moot the issue of prejudice. *See United States v. Hoskins*, 910 F.2d 309, 311 (5th Cir. 1990); *Thomas v. Lynaugh*, 812 F.2d 225, 229-30 (5th Cir. 1987). It is also generally unnecessary to consider whether counsel's performance was deficient where there is an insufficient showing of prejudice. *See Black v. Collins*, 962 F.2d at 401; *Martin v. McCotter*, 796 F.2d 813, 821 (5th Cir. 1986).

## V. Discussion

As mentioned above, Osorio-Martinez's § 2255 Motion and other submissions attempt to raise three ineffective assistance of counsel claims against her trial counsel, Oscar de la Fuente, Jr. *See* Dkt. No. 1 at 4-5, 7; Dkt. No. 15 at 1-7; Dkt. No. 15-1 at 2-10; Dkt. No. 40 at 3-35. The Government argues that all of Osorio-Martinez's claims lack merit, and should be dismissed. *See generally* Dkt. Nos. 14 and 44. For the reasons provided below, the Court agrees.

**A.   Osorio-Martinez's claim that De la Fuente failed to interview her adult children and their families to disprove allegations by Government witnesses Nidia Abril Gutierrez and Maria Ysabel Lopez-Olmedo**.   Osorio-Martinez argues that De la Fuente provided ineffective assistance because he did not interview her son, Pedro Vasquez, "to disprove allegations that he was romantically involved with Nidia Abril Gutierrez, and had picked up a vehicle loaded with drugs from Ms. Gutierrez while she was visiting Texas" with Osorio-Martinez.   Dkt. No. 1 at 4; *see also* Dkt. No. 15 at 2-5; Dkt. No. 40 at 5, 7-26; Dkt. No. 38 at 156-158.   Osorio-Martinez also claims that De la Fuente failed to interview her children.   She states that, had he done so, he would have been able to disprove the Government's claim that: (1) she did not spend much time with her family when visiting Texas; and (2) one of her daughters was planning to pick up the drug-laden blue Camry in Brownsville on the day Osorio-Martinez was arrested.   *Id*.   Osorio-Martinez states that she repeatedly attempted to get De la Fuente to interview her children, and call them as witnesses to support her version of the facts.   Instead of listening to her, she claims that De la Fuente yelled at her, accused her of lying, and told her that presenting evidence contradicting the Government's story would only make things worse for her.   *Id*.

As the movant, Osorio-Martinez bears the burden to demonstrate that De la Fuente provided ineffective assistance for failing to interview her children, or call them as witnesses.   A movant cannot demonstrate ineffectiveness on the part of her counsel for failing to call a witness unless she can: (1) name the witness; (2) show that the witness was available to testify during the relevant time; (3) show that the witness would have testified; (4) identify the content of the witness's proposed testimony; and,

(5) demonstrate that the testimony would have been favorable to the movant. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citations omitted). "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Id*. Therefore, a movant's failure "to present some evidence from the uncalled witness regarding that witness's potential testimony and willingness to testify is usually fatal to an ineffective assistance of counsel claim." *United States v. Zuniga*, No. CA C-10-00324, 2012 WL 642061, at *15 (S.D. Tex. Feb. 24, 2012) (citing *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 1997) and *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)).

Here, Osorio-Martinez's attempts to meet her burden fall short in several respects. First, although she claims that De la Fuente should have interviewed her son, Pedro Vasquez, and called him as a witness, she has failed to show that Vasquez was available to speak with De la Fuente, or testify. Vasquez did not appear or testify at Osorio-Martinez's evidentiary hearing before this Court. Osorio-Martinez has submitted no affidavit from him indicating that he was available to speak with De la Fuente, or testify. At the evidentiary hearing, Osorio-Martinez also testified that De la Fuente was not able to interview her son because he was in Mexico. Dkt. No. 38 at 157. Although it is true that De la Fuente could have attempted to subpoena Vasquez, Osorio-Martinez has not demonstrated that this would have been successful, nor has she demonstrated that his testimony would have been favorable.

Second, De la Fuente credibly testified that he did not interview Vasquez because Osorio-Martinez "was not very forthcoming with information concerning her family." Dkt. No. 38 at 18. In fact, De la Fuente credibly testified that he questioned Osorio-Martinez about the facts surrounding her case and her family, but that she was mostly nonresponsive, prompting him to move for a determination concerning competency. *Id.* at 13, 18, 33-34. De la Fuente's testimony here is consistent with the record evidence, as he did move to have Osorio-Martinez's competency evaluated, and a mental competency hearing was held. *See* CR Dkt. No. 30 (Motion); CR Minute Entry, dated June 26, 2011 (Competency Hearing). De la Fuente's testimony is also supported by the fact that the United States Probation Office could not corroborate Osorio-Martinez's "personal and family data" due to her failure to recall the phone numbers of her children living in the United States. CR Dkt. No. 95, at ¶ 44.

Third, the testimony Osorio-Martinez provided was not credible. In addition to the fact that Osorio-Martinez's responses and inconsistency indicated a willingness to lie; her testimony conflicted with the record evidence. For example, at the evidentiary hearing Osorio-Martinez testified that, when she was apprehended at the United States port of entry, she never stated that Adolfo Aguirre was her son-in-law because he is not her son-in-law. Dkt. No. 38 at 59. However, during Osorio-Martinez's trial, United States Customs and Border Protection Agent Brenda Garza testified, under oath, that Osorio-Martinez told her that the blue Camry belonged to her son-in-law, Adolfo Aguirre. CR Dkt. No. 114-1 at 13-14. Similarly, Special Agent Paul Altenburg from Immigration and Customs Enforcement testified, under oath, that Osorio-Martinez told him that Adolfo Aguirre was her son-in-law. CR Dkt. No. 114-2 at 5.

More tellingly, Osorio-Martinez has filed an affidavit in this case wherein she indicates that she did refer to Adolfo Aguirre as her son-in-law.  Dkt. No. 15-1 at 9 ("Isabel insisted I claim the car belonged to my son-in-law.  I didn't want to, but she said that if I said he was a friend they'd never believe it.").

At the evidentiary hearing, Osorio-Martinez also testified that she told De la Fuente to speak with her children "three times," but he refused.  Dkt. No. 38 at 158. This testimony conflicts with the testimony that two of Osorio-Martinez's children provided at the hearing.  *Id*. at 83-144.  Modesta Vasquez stated that De la Fuente spoke with her several times, questioned her regarding the alleged facts of Osorio-Martinez's case, and asked her if she would be willing to testify at Osorio-Martinez's trial.  *Id*. at 88-90.  Servando Vasquez also testified that he spoke with De la Fuente about Osorio-Martinez's case, and that De la Fuente asked him if he would be willing to testify at her trial.  *Id*. at 108.

Osorio-Martinez's evidentiary hearing testimony also included a claim that, when she went before the Court for her initial appearance, the Court failed to inform her of the maximum penalty she faced if she was convicted by a jury.  Dkt. No. 38 at 150.  Although the Court has not ordered the transcript from her initial appearance to prove that this did not occur, her claim here is dubious.  As a matter of course, the Court informs all defendants of the applicable maximum penalties they face during their initial appearances.  It is highly unlikely that the Court would have neglected to do so in Osorio-Martinez's particular case.

Similarly, Osorio-Martinez testified at the evidentiary hearing that, during her criminal case, she informed the Court that she could not understand De la Fuente

because he did not speak Spanish. *Id*. at 151. Osorio-Martinez has failed to cite the record or otherwise identify when she informed the Court of De La Fuente's alleged language deficiency. She has also failed to provide any evidence to support her allegations concerning De La Fuente's ability to speak Spanish. In responding to her allegations at the evidentiary hearing, De la Fuente credibly testified that he was fluent in Spanish. Dkt. No. 38 at 166-169.[3]

Finally, Osorio-Martinez's attempts to meet her burden fall short because the testimony her children provided at the evidentiary hearing did little to support her claims. Although her children did allege that Osorio-Martinez had visited them on certain occasions, their testimony was too vague to allow the Court to conclude that Osorio-Martinez had visited her children during the dates she was suspected of visiting the United States for the purpose of trafficking drugs. *See generally* Dkt. No. 38 at 83-134. As such, it appears unlikely that the testimony of Osorio-Martinez's children would have undermined the Government's attempt to prove its case against her at trial. Osorio-Martinez's own testimony at the evidentiary hearing also tended to support the Government's case, as she testified that she did not always tell her children when she was coming into the United States because she would come here to shop and then go directly back to Mexico. *Id*. at 145 ("I didn't tell them because I had my thing going on about me coming here to buy $500 worth of things to sell and then going back.").

---

[3] The questionable aspects of Osorio-Martinez's testimony are not limited to these examples. However, the Court will not belabor the point. In general, Osorio-Martinez's lack of recollection, inconsistent responses, and evasiveness detracted from her credibility. *See, e.g.,* Dkt. No. 38 at 55-56, 62, 70, 78-79, 80-81.

Thus, even in hindsight, De la Fuente's decision to avoid calling Osorio-Martinez's children as witnesses appears reasonable and informed. "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983). Osorio-Martinez has not shown that De la Fuente's decision permeated her trial with obvious unfairness. As she has not met her burden, this Court should not second-guess De la Fuente's choice. *See Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (courts should refrain from second-guessing the strategic, informed decisions of counsel because such decisions "are given a heavy measure of deference"); *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) (same). Osorio-Martinez's claim that De la Fuente provided ineffective assistance by failing to interview and call her children as witnesses lacks merit, and should be dismissed.

**B.    Osorio-Martinez's claim that De la Fuente provided ineffective assistance by wrongfully preventing her from testifying at her trial.** Osorio-Martinez asserts that she repeatedly told De la Fuente that she wanted to testify at her trial. Specifically, she states that she told him "three times" that she wanted to testify, so that she could tell the jury that she did not know anything about the drugs in the blue Camry. Dkt. No. 38 at 159, 162. Instead of allowing her to testify, Osorio-Martinez claims that De la Fuente refused to call her as a witness, told her to keep quiet, and failed to tell her that the decision to testify belonged to her. *Id*. at 63, 67-68, 158-162; *see also* Dkt. No. 1 at 5; Dkt. No. 15 at 5-6; Dkt. No. 40 at 6-7, 27-31.

In response, De la Fuente testified that he never told Osorio-Martinez that she could not testify.  Dkt. No. 38 at 36-37.  In fact, he told her that she "was free to testify if she wanted to[,]" but that it was his advice that she avoid doing so because the statements she provided at her suppression hearing were inconsistent with the statements she provided when she was apprehended.  *Id*.  De la Fuente stated that Osorio-Martinez appeared to agree with his advice, and did not protest when he advised her not to take the stand.  *Id*.

At the threshold, in considering all of the claims raised by Osorio-Martinez, the Court notes that it has considered De la Fuente's lamentable, dishonest conduct and suspension from the practice of law.  *See* Dkt. No. 38 at 10-11 (containing De la Fuente's testimony concerning his suspension for paying "for access to the District Attorney's office in exchange for favorable dispositions on [the] people [he] was representing.").  Nevertheless, his testimony at the hearing before this Court was both credible, and consistent with the record evidence.

Osorio-Martinez's testimony, on the other hand, was not credible.  Osorio-Martinez testified that she told De la Fuente "three times" that she wanted to testify.  Dkt. No. 38 at 159.  However, she also stated that she told De la Fuente to interview her children "three times[,]" and that she told him she did not want to go to trial "three times[.]"  *Id*. at 66.  By itself, her claim regarding the triplicate nature of her instructions to De la Fuente might not give the Court a reason to pause.  But, when considered in conjunction with the rest of her testimony, her claim here reveals a tendency, on the part of Osorio-Martinez, to overreach in order to prevail.  Stated more

simply, Osorio-Martinez's testimony indicates a willingness to say whatever she believes will help her to gain her freedom, regardless of its truth.

Osorio-Martinez's tendency to overreach was also evidenced by her willingness to state that others involved in her case were lying, about "[e]verything." *Id.* at 64.

> Q    Did the witnesses ever say anything during the trial that you believed was untrue?
>
> A    Everything that they said was a lie, sir.
>
> Q    Well, not everything.  You did cross the border that day.
>
> A    That was the true part.  But the rest --- that I was riding with the lady in the car, but the rest is a lie.

*Id. See also id.* at 63 ("Q  Did you ever tell anyone that your daughter was going to pick up the blue car in Brownsville?  A  That was a lie.  No one --- I didn't even mention my children."); Dkt. No. 15-1 at 8-9 (containing Osorio-Martinez's repeated, sworn accusations that the witnesses at her trial were lying).  The record does not support the contention that all of the Government's trial witnesses lied about everything, excepting Osorio-Martinez's presence in the car.  For example, Osorio-Martinez cannot credibly refute the testimony of Government witnesses regarding the discovery of drugs in the blue Camry, especially in light of the fact that she stipulated to the presence of these drugs at trial.  CR Dkt. No. 114-1 at 26-34, 40.

Similarly, at the evidentiary hearing, after Osorio-Martinez's daughter testified that Pedro Vasquez had spent "years" in jail, Osorio-Martinez stated that she had not heard this testimony, despite her presence in the courtroom.  Dkt. No. 38 at 140, 152.  Then, when questioned further, she testified that her daughter "didn't even know what she was talking about."  *Id.* at 152.  In addition to failing to testify credibly on

her own behalf, Osorio-Martinez has not provided any other credible evidence to support her claim that De la Fuente prevented her from testifying, or misinformed her of her right to testify.   Accordingly, Osorio-Martinez's claim here lacks merit and should be dismissed.

**C.  Osorio-Martinez's claim that De la Fuente wrongfully induced her to go to trial by failing to correctly advise her regarding her potential sentence**. Osorio-Martinez contends that De la Fuente told her that, if she accepted the Government's plea agreement offer, she would get ten years, but that if she went to trial, she would get less than ten years.   Dkt. No. 1 at 7; Dkt. No. 15 at 6-7; Dkt. No. 15-1 at 8-9; Dkt. No. 40 at 5-6, 32-35.   She claims that she declined the Government's offer, due to De la Fuente's incorrect and ineffective advice.   *Id*.   She states that De la Fuente never told her "that she was facing a minimum of 235 months in prison and a maximum of 292 months, under the Guidelines."   Dkt. No. 40 at 5.   Instead, she claims that he only told her that if they went to trial they would win, and if they did not win she would get only a small amount of time.   Dkt. No. 38 at 159.   She indicates that she was would have entered a guilty plea pursuant to the Government's offer, had De la Fuente ever informed her of her true exposure if she went to trial.   Dkt. No. 15-1 at 8 ("He told me that if I took [the plea deal], I'd get more time than I'd get at trial.   That is why I did not take that.   He never told me what kind of sentence I could get if I went to trial.").

Somewhat inconsistently, Osorio-Martinez also suggests that De la Fuente put pressure on her to cooperate with the Government and plead guilty.

> I was approached by Mr. De La Fuente several times about cooperating [with the Government]. I repeatedly told him that I had no information on anybody. He was very angry with me about that. The only people I knew that were involved in this case were Maria Ysabel Lopez-Olmedo and her husband, and she was set to testify against me. The government was not interested in information about her. Mr. De La Fuente said to just make something up to incriminate other people. I wasn't willing to do that.

*Id*. (errors in original). At the evidentiary hearing, Osorio-Martinez stated that she wanted to testify at her trial in order to tell the Judge and the Jury that she was innocent, and had not known that there were drugs in the blue Camry. Dkt. No. 38 at 160, 162. In her "Post Evidentiary Hearing Memorandum," Osorio-Martinez states that she could have entered an *Alford* plea, thus allowing her to plead guilty, without actually admitting guilt. Dkt. No. 40 at 34.

> It is important to note that the Petitioner did not have to admit guilt to plead guilty. She could have entered an *Alford* plea. *N.C. v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed. 2d 162 (1970). The standard for accepting a plea of guilty is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Alford, supra*, 400 U.S. at 31. Mr. De La Fuente has never done an *Alford* plea. (Hearing transcript, 48) He never discussed one with the Petitioner.

*Id*. at 34-35 (errors in original).

At the evidentiary hearing, De la Fuente testified that he did not tell Osorio-Martinez that she would get less time if she went to trial. Dkt. No. 38 at 38. In fact, he stated that he told her she would get "substantially more time" if she went to trial. *Id*. at 40-41. At the hearing, De la Fuente could not recall the maximum amount of time Osorio-Martinez had been facing if she went to trial. *Id*. at 21-22. Still, he confirmed that he had calculated that amount under the guidelines at the time, and indicated that he would have given this information to Osorio-Martinez because he felt

it was "very important" for her to know what her "potential outcomes at trial" would be. *Id*.

De la Fuente additionally testified that he informed Osorio-Martinez that, if she accepted the plea agreement offer, cooperated with the Government, and told them what she knew, she might qualify for various different reductions in her sentence. Dkt. No. 38 at 19-21, 37, 38, 41, 45-46. He contends that he was not successful in encouraging her to plead guilty because she maintained that she was innocent and did not want to accept responsibility or admit guilt. *Id*.

Again, despite his history of dishonest conduct, De la Fuente's testimony at the evidentiary hearing was credible. *See* Dkt. No. 238 at 19-21, 37-46. Osorio-Martinez's testimony, largely, was not. Her testimony was also frequently inconsistent and confusing. *See, e.g.* Dkt. No. 38 at 66 ("[De la Fuente] told me that we weren't going to take the case to trial and I told him no. Three times I told him, let's not take the case to trial and he would say, "Yes." I went to trial against my own will because I didn't want to."). Her inconsistent and convoluted testimony is not limited to the examples already discussed in this Report. For example, at the evidentiary hearing, Osorio-Martinez testified that she had never stated that Abril Gutierrez sold the blue Camry to Adolfo Aguirre. *Id*. at 81. However, at the suppression hearing in her criminal case, Osorio-Martinez testified that she told "the agents" that Abril owned the blue Camry, but had "sold it to Adolfo." CR Dkt. No. 70 at 22.

After having considered all of the relevant evidence and testimony, the Court finds that Osorio-Martinez's allegations are not credible. Rather than indicating that she was induced to go to trial by De la Fuente's ineffectiveness, the record evidence

and testimony indicates that Osorio-Martinez did not want to enter a guilty plea of any type because: (1) she wanted to maintain her innocence; (2) she did not want to cooperate with the Government; and (3) she believed that ten years was too much time. *See generally* Dkt. No. 38 at 51-83, 144-163. Osorio-Martinez's ineffective assistance of counsel claim here lacks merit and should be denied.

## VI.  Certificate of Appealability

A certificate of appealability shall not issue unless the petitioner/movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires a "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (internal quotations and citations omitted). Said another way, where claims have been dismissed on the merits, the movant/petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. at 484. Where claims have been dismissed on procedural grounds, the movant/petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

District courts may deny certificates of appealability sua sponte, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th

Cir. 2000).  A certificate of appealability should not issue in this case because Osorio-Martinez has not made a substantial showing of the denial of a constitutional right.

## VII.  Recommendation

It is recommended that Osorio-Martinez's § 2255 Motion be dismissed with prejudice.  Additionally, it is recommended that the Court decline to issue a certificate of appealability.

## VIII.  Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Signed on this 26th day of May, 2016.

_____
Ignacio Torteya, III
United States Magistrate Judge