United States District Court
Southern District of Texas

**ENTERED**

July 18, 2017

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| REYNA  OSORIO-MARTINEZ | § | |
| | § | |
| Petitioner | § | |
| VS. | § | CIVIL NO. 1:14-CV-089 |
| | § | |
| UNITED STATES OF AMERICA | § | |

## ORDER

Pending before the Court is Petitioner Reyna Osorio-Martinez's ("Osorio-Martinez") Motion to Vacate, Set Aside, or Correct Sentence (Dkt. No. 1) and the United States' Response and Motion to Dismiss ("Government's Motion") (Dkt. No. 14). On March 26, 2016, United States Magistrate Judge Ignacio Torteya, III, the Magistrate Judge to whom this case was referred pursuant to 28 U.S.C. § 636(b), issued his Report and Recommendation ("R&R") recommending that the Court dismiss Osorio-Martinez's motion with prejudice and that a Certificate of Appealability be denied. *See* Dkt. No. 45.

This recommendation is based on a finding that Osorio-Martinez's petition should be denied because she has not met her burden to show that her trial counsel, Oscar de la Fuente, Jr., ("De la Fuente") or counsel at sentencing, Nathaniel C. Perez ("Perez") provided her with ineffective assistance.[1] On November 18, 2015, the Magistrate Judge held an evidentiary hearing regarding Osorio-Martinez's habeas petition grounds, in which Osorio-Martinez and De la Fuente, among other witnesses, appeared. The R&R describes the hearing in detail. *See generally* Dkt. No. 45.

Osorio-Martinez filed her objections through her attorney on June 9, 2016. *See* Dkt. No. 46. She objects on two grounds. First, Osorio-Martinez objects to the Magistrate Judge's conclusion that she did not meet her burden to show that De la

---

[1] At an evidentiary hearing before the Magistrate Judge on November 22, 2015, Osorio-Martinez withdrew her claim that Perez provided her with ineffective assistance. *See* R&R, Dkt. No. 45 at 5 (citing Dkt. No. 38 at 5, 164–5).

Fuente's decision not to interview her adult children and their families constituted ineffective assistance of counsel. Dkt No. 46 at 1. Osorio-Martinez argues that testimony of such individuals would "negat[e] any affirmative links between [her] and the contraband discovered in the Blue Camry." Dkt No. 46 at 1. She points to the Fifth Circuit's ruling on her direct appeal, *see* 1:11-CR-444, Dkt. No. 129 at 2–3, which stated that trial testimony representing that Osorio-Martinez did not visit with her family members on the crossings helped establish the sufficiency of the evidence to support her conviction. *Id.*

The Magistrate Judge addressed these arguments in the R&R. The R&R provides:

> As the movant, Osorio-Martinez bears the burden to demonstrate that De la Fuente provided ineffective assistance for failing to interview her children, or call them as witnesses. A movant cannot demonstrate ineffectiveness on the part of her counsel for failing to call a witness unless she can: (1) name the witness; (2) show that the witness was available to testify during the relevant time; (3) show that the witness would have testified; (4) identify the content of the witness's proposed testimony; and, (5) demonstrate that the testimony would have been favorable to the movant. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citations omitted). "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Id.* Therefore, a movant's failure "to present some evidence from the uncalled witness regarding that witness's potential testimony and willingness to testify is usually fatal to an ineffective assistance of counsel claim." *United States v. Zuniga*, No. CA C-10-00324, 2012 WL 642061, at *15 (S.D. Tex. Feb. 24, 2012) (citing *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 1997) and *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)).
>
> Here, Osorio-Martinez's attempts to meet her burden fall short in several respects. First, although she claims that De la Fuente should have interviewed her son, Pedro Vasquez, and called him as a witness, she has failed to show that Vasquez was available to speak with De la Fuente, or testify. Vasquez did not appear or testify at Osorio-Martinez's evidentiary hearing before this Court. Osorio-Martinez has submitted no affidavit from him indicating that he was available to speak with De la Fuente, or testify. At the evidentiary hearing, Osorio-Martinez also testified that De la Fuente was not able

to interview her son because he was in Mexico. Dkt. No. 38 at 157. Although it is true that De la Fuente could have attempted to subpoena Vasquez, Osorio-Martinez has not demonstrated that this would have been successful, nor has she demonstrated that his testimony would have been favorable.

Second, De la Fuente credibly testified that he did not interview Vasquez because Osorio-Martinez "was not very forthcoming with information concerning her family." Dkt. No. 38 at 18. In fact, De la Fuente credibly testified that he questioned Osorio-Martinez about the facts surrounding her case and her family, but that she was mostly nonresponsive, prompting him to move for a determination concerning competency. *Id.* at 13, 18, 33-34. De la Fuente's testimony here is consistent with the record evidence, as he did move to have Osorio-Martinez's competency evaluated, and a mental competency hearing was held. *See* CR Dkt. No. 30 (Motion); CR Minute Entry, dated June 26, 2011 (Competency Hearing). De la Fuente's testimony is also supported by the fact that the United States Probation Office could not corroborate Osorio-Martinez's "personal and family data" due to her failure to recall the phone numbers of her children living in the United States. CR Dkt. No. 95, at ¶ 44.

Third, the testimony Osorio-Martinez provided was not credible. In addition to the fact that Osorio-Martinez's responses and inconsistency indicated a willingness to lie; her testimony conflicted with the record evidence. For example, at the evidentiary hearing Osorio-Martinez testified that, when she was apprehended at the United States port of entry, she never stated that Adolfo Aguirre was her son-in-law because he is not her son-in-law. Dkt. No. 38 at 59. However, during Osorio-Martinez's trial, United States Customs and Border Protection Agent Brenda Garza testified, under oath, that Osorio-Martinez told her that the blue Camry belonged to her son-in-law, Adolfo Aguirre. CR Dkt. No. 114-1 at 13-14. Similarly, Special Agent Paul Altenburg from Immigration and Customs Enforcement testified, under oath, that Osorio-Martinez told him that Adolfo Aguirre was her son-in-law. CR Dkt. No. 114-2 at 5.

More tellingly, Osorio-Martinez has filed an affidavit in this case wherein she indicates that she did refer to Adolfo Aguirre as her son-in-law. Dkt. No. 15-1 at ("Isabel insisted I claim the car belonged to my son-in-law. I didn't want to, but she said that if I said he was a friend they'd never believe it.").

At the evidentiary hearing, Osorio-Martinez also testified that she told De la Fuente to speak with her children . . . but he refused. Dkt. No. 38 at 158. This testimony conflicts with the testimony that two of Osorio-Martinez's children provided at the hearing. *Id.* at 83-144. Modesta Vasquez stated that De la Fuente spoke with her several

times, questioned her regarding the alleged facts of Osorio- Martinez's case, and asked her if she would be willing to testify at Osorio-Martinez's trial. *Id.* at 88-90. Servando Vasquez also testified that he spoke with De la Fuente about Osorio-Martinez's case, and that De la Fuente asked him if he would be willing to testify at her trial. *Id.* at 108. . . .

Finally, Osorio-Martinez's attempts to meet her burden fall short because the testimony her children provided at the evidentiary hearing did little to support her claims. Although her children did allege that Osorio-Martinez had visited them on certain occasions, their testimony was too vague to allow the Court to conclude that Osorio-Martinez had visited her children during the dates she was suspected of visiting the United States for the purpose of trafficking drugs. *See generally* Dkt. No. 38 at 83-134. As such, it appears unlikely that the testimony of Osorio-Martinez's children would have undermined the Government's attempt to prove its case against her at trial. Osorio-Martinez's own testimony at the evidentiary hearing also tended to support the Government's case, as she testified that she did not always tell her children when she was coming into the United States because she would come here to shop and then go directly back to Mexico. *Id.* at 145 ("I didn't tell them because I had my thing going on about me coming here to buy $500 worth of things to sell and then going back.").

Thus, even in hindsight, De la Fuente's decision to avoid calling Osorio-Martinez's children as witnesses appears reasonable and informed. "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983). Osorio-Martinez has not shown that De la Fuente's decision permeated her trial with obvious unfairness.

R&R, Dkt. No. 45, at 10–15.

In light of the testimony elicited from Osorio-Martinez's children, Osorio-Martinez, and De la Fuente at the evidentiary hearing, the Court agrees with the R&R that Osorio-Martinez has not met her burden to show that De la Fuente's performance was constitutionally deficient for failing to interview her children, or call them as witnesses. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) ("First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.

Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.").

Second, Osorio-Martinez objects to the R&R's finding that De la Fuente offered credible and truthful testimony. *Id.* at 10. The R&R discusses De la Fuente's credibility in the context of Osorio-Martinez's three ineffective assistance of counsel claims. As already excerpted above, the R&R discusses De la Fuente's credibility in the context of Osorio-Martinez's claim regarding his failure to interview her children. *See* R&R, Dkt. No. 45, at 12. Additionally, the R&R states in a section discussing Osorio-Martinez's claim that De la Fuente provided ineffective assistance by wrongfully preventing her from testifying at her trial that De la Fuente

> testified that he never told Osorio-Martinez that she could not testify. Dkt. No. 38 at 36-37. In fact, he told her that she "was free to testify if she wanted to[,]" but that it was his advice that she avoid doing so because the statements she provided at her suppression hearing were inconsistent with the statements she provided when she was apprehended. De la Fuente stated that Osorio-Martinez appeared to agree with his advice, and did not protest when he advised her not to take the stand.

R&R, Dkt. No. 45, at 16 (internal citations omitted).

The Magistrate Judge found that, despite De la Fuente's testimony concerning his suspension for paying "for access to the District Attorney's office in exchange for favorable dispositions on [the] people [he] was representing," *id.* (quoting Dkt. No. 38 at 10–11), De la Fuente's "testimony at the hearing before [the Magistrate Judge] was both credible, and consistent with record evidence." *Id.* The Magistrate Judge explained that Osorio-Martinez's testimony, on the other hand, evinced a "tendency to overreach" such as by stating that others involved in her case were lying about "everything." *See id.* at 16–17.

The R&R also discusses De la Fuente's credibility in the context of Osorio-Martinez's argument that De la Fuente wrongfully induced her to go to trial by failing to correctly advise her regarding her potential sentence. *See* R&R, Dkt. No. 45, at 18–21. As the R&R summarizes:

>Osorio-Martinez contends that De la Fuente told her that, if she accepted the Government's plea agreement offer, she would get ten years, but that if she went to trial, she would get less than ten years. Dkt. No. 1 at 7; Dkt. No. 15 at 6-7; Dkt. No. 15-1 at 8-9; Dkt. No. 40 at 5-6, 32-35. She claims that she declined the Government's offer, due to De la Fuente's incorrect and ineffective advice. *Id.* She states that De la Fuente never told her "that she was facing a minimum of 235 months in prison and a maximum of 292 months, under the Guidelines." Dkt. No. 40 at 5. Instead, she claims that he only told her that if they went to trial they would win, and if they did not win she would get only a small amount of time. Dkt. No. 38 at 159. She indicates that she was would have entered a guilty plea pursuant to the Government's offer, had De la Fuente ever informed her of her true exposure if she went to trial. Dkt. No. 15-1 at 8 ("He told me that if I took [the plea deal], I'd get more time than I'd get at trial. That is why I did not take that. He never told me what kind of sentence I could get if I went to trial.").

R&R, Dkt. No. 45, at 18.

The R&R states that during the evidentiary hearing, De la Fuente testified that he did not tell Osorio-Martinez that she would get less time if she went to trial. *See id.* at 19 (citing Dkt. No. 38 at 38). "In fact, he stated that he told her she would get 'substantially more time' if she went to trial." *Id.* (citing Dkt. No. 38 at 40–41). De la Fuente additionally testified that he informed Osorio-Martinez that, if she accepted the plea agreement offer, cooperated with the Government, and told them what she knew, she might qualify for various different reductions in her sentence. *Id.*

Osorio-Martinez argues that the Magistrate Judge's credibility findings and conclusions of law are not supported by the record because, *inter alia*, this Court had previously "found [De la Fuente's] dishonesty so severe that he was summarily precluded from further representation on this case." Dkt. No. 46 at 11 (referring to the underlying criminal case 1:11-CR-444). The Court's records show that on December 14, 2011, this Court granted De la Fuente's unopposed motion to withdraw as attorney for Osorio-Martinez in the underlying criminal case due to a potential conflict. *See* 1:11-CR-444, Dkt. Nos. 94, 92. In that Order granting De La

Fuente's withdrawal, this Court did not make any findings that De la Fuente was dishonest. *See* 1:11-CR-444, Dkt. No. 94.

Additionally, Osorio-Martinez argues that corroboration of De la Fuente's testimony could have been made by the production of a "file he made available to Petitioner's present Mr. De La Fuente." [sic][2] Dkt. No. 46 at 11. Osorio-Martinez argues that the Magistrate Judge did not request production of De la Fuente's file to corroborate testimony and, therefore, "[t]he only 'proof' Mr. De La Fuente relied on to corroborate this testimony does not exist in the record of this case." *Id.* at 11.

Opinion testimony by a lay witness constitutes admissible evidence. *See* Fed. R. Evid. 701; *see also* Fed. R. Evid. 702 advisory committee's note to 1972 Proposed Rules ("The rule assumes that the natural characteristics of the adversary system will generally lead to an acceptable result, since the detailed account carries more conviction than the broad assertion . . . . [C]ross-examination and argument will point up the weakness."). De la Fuente's testimony constituted admissible evidence upon which the Magistrate Judge could make findings of fact regarding Osorio-Martinez's allegations in her three ineffective assistance of counsel claims.

The Court further finds that the Magistrate Judge to whom this case was referred pursuant to 28 U.S.C. § 636 is in the best position to make credibility determinations from evidentiary hearings. *See United States v. Scribner*, 832 F.3d 252, 257 (5th Cir. 2016) ("We defer to the district court's acceptance of the magistrate judge's credibility recommendations, based on his having heard live testimony. . . . However, where the district judge makes material credibility choices at *variance* with those of the magistrate, the judge must, at least in certain cases, have a hearing at which he or she personally hears the testimony.") (internal quotations and alterations omitted) (emphasis in original) (quoting *Garcia v. Boldin*, 691 F.2d 1172, 1179 n.13 (5th Cir. 1982)).

---

[2] The Court believes that Osorio-Martinez meant to state: "The corroboration of Mr. De La Fuente's testimony was supposed to lie in the file he made available to Petitioner's present *attorney*." *See* Dkt. No. 46 at 11. Either way, the Court finds that this argument is not dispositive of the issue of De la Fuente's credibility for the reasons discussed in the paragraphs below.

After independently reviewing the record, the law, and Osorio-Martinez's objections, the Court adopts the Magistrate Judge's proposed findings and recommendations. The Court **DISMISSES** Osorio-Martinez's § 2255 Motion, Dkt. No. 1, and **DENIES** Osorio-Martinez a certificate of appealability. The Clerk shall close the case after entering the accompanying judgment.

It is so **ORDERED**.


SIGNED this 18th day of July, 2017.

_____
Hilda Tagle
Senior United States District Judge